# UNITED STATES DISTRICT COURT

### for the

Eastern District of Tennessee

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| ROGER GLENN BOLAND | ) | 3:22-MJ- 2174 |
| | ) | |
| | ) | |
| | ) | |

_Defendant(s)_

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _5/8/22 and 9/5/22 - 9/8/22_ in the county of _Sevier_ in the
_Eastern_ District of _Tennessee_ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) and (e) | Production of Child Pornography |
| 18 U.S.C. § 2252A(a)(2) | Distribution of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |

This criminal complaint is based on these facts:

See Affidavit of Investigator John Williams attached hereto and incorporated herein as Exhibit A.

☑ Continued on the attached sheet.

_Complainant's signature_

Investigator John Williams
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 9-9-22

_Judge's signature_

City and state: Knoxville, Tennessee

Jill McCook, United States Magistrate Judge
_Printed name and title_



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

UNITED STATES OF AMERICA ) 
 )
 v. ) Case No. 3:22-MJ- 2174
 )
ROGER GLENN BOLAND )

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your affiant, John Williams Jr., an Investigator with the Knoxville Police Department

(KPD) Internet Crimes against Children (ICAC) Task Force and being a Task Force Officer with

the United States Department of Homeland Security (DHS), Immigration and Customs

Enforcement (ICE), Homeland Security Investigations (HSI) being duly sworn, deposes and

states the following:

1.    Your affiant has been employed with the KPD since August 14, 2000.  Since

December 2012, I have been assigned to the KPD's ICAC Task Force as an undercover online

investigator.  The KPD-ICAC Task Force is responsible for investigating and enforcing federal

criminal statutes involving the sexual exploitation of children under Title 18, United States Code,

Chapter 110, including, without limitation, sections 2252A(a)(2), 2252A(a)(5)(B) and 2251.  I

have acquired experience in these matters through specialized training and everyday work related

to these types of investigations.

2.    As a federal task force officer, your affiant is authorized to investigate violations

of the laws of the United States and is a law enforcement officer with the authority to execute

warrants issued under the authority of the United States.

1

3.      The information contained within the affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience, and/or information related to me by other law enforcement officers and/or agents.  Since this affidavit is being submitted for the limited purpose of a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning the investigation.  I make this affidavit in support of a complaint and warrant for arrest of ROGER GLENN BOLAND for producing child pornography in violation of 18 U.S.C. § 2251(a) & (e), and for and for using a facility or means of interstate or foreign commerce to knowingly distribute child pornography in violation of 18 U.S.C. § 2252A(a)(2), and for knowingly possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  I have received training in the area of sexual exploitation of minors, including the possession and distribution of child pornography that depicts minors engaged in sexually explicit conduct.  Except as noted, all of the information contained in this affidavit is either known to me personally or has been told to me by other law enforcement officials.

## THE INVESTIGATION

4.      On September 8, 2022, a search warrant for BOLAND's home at 915 Jamesena Miller Drive, Pigeon Forge, Tennessee 37863 was signed by this Honorable Court.  [*See Affidavit 3:22-MJ-2172 incorporated herein*].

5.      On September 9, 2022, said search warrant was executed.  At the execution of the search warrant the BOLAND voluntarily spoke to law enforcement and pursuant to the search warrant electronics were located and seized.

2

6.      A Blu Smartphone, Model: B131DL, IMEI #: 3568626260081078 with phone number (865) 203-9249 identified as belonging to BOLAND was seized and cursorily examined for child pornography onsite. (Herein referred to as BOLAND's phone.)

7.      Produced by and located in the gallery of BOLAND's phone were photographs as described below:

a.  Taken on September 5, 2022, at 12:16 a.m. a close-up photograph of a naked prepubescent anus and vagina;

b.  Taken on September 7, 2022, at approximately midnight, a photograph of a 13-year-old female identified as BOLAND's granddaughter sitting on the floor topless wearing a diaper;

c.  Taken on September 7, 2022, at approximately midnight, a photograph of BOLAND's 13-year-old granddaughter bent over on her knees with her back exposed wearing a diaper;

d.  Taken on September 7, 2022, at approximately midnight, a photograph of BOLAND's 13-year-old granddaughter laying on the floor on her side, topless wearing a diaper;

e.  Taken on September 8, 2022, at 10:01:14 p.m. a close-up photograph of a prepubescent vagina and anus with a green cushion[1] under the buttock of the minor female;

f.  Taken on September 8, 2022, at 10:01:59 p.m. is a close-up photograph of a prepubescent vagina and anus with two fingers attempting to spread the vagina with a green cushion under the buttock of the minor female;

---

[1] Located in BOLAND's home is a green chair with a green cushion that appears to be the same cushion in the photographs.

g.  Taken on September 8, 2022, at 10:02:01 p.m. a close-up photograph of a prepubescent vagina and anus with a green cushion under the buttock of the minor female;

h.  Taken on September 8, 2022, at 10:02:05 p.m. a close-up photograph of a prepubescent vagina and anus with a green cushion under the buttock of the minor female;

i.  Taken on September 8, 2022, at 10:02:09 p.m. a close-up photograph of a prepubescent vagina and anus with a green cushion under the buttock of the minor female[2]; and

j.  Taken on September 8, 2022, approximately 30 minutes after the last photograph was taken, a close-up photograph of what is believed to be a different females vagina with what appears to be semen dripping down to her buttock, with a hand wearing a gold ring spreading the lips of her vagina and what appears to be the same green cushion in the prior five photographs.

8.      During the voluntary interview of BOLAND he confirmed he was the individual who corresponded and distributed photographs via Facebook as referenced in the Search Warrant Affidavit 3:22-MJ-2172 incorporated herein.  BOLAND admitted he has distributed and received child pornography in the past.  BOLAND admitted the photographs located on BOLAND's phone were taken by him but denied the photographs are of his 13-year-old granddaughter.

## CONCLUSION

9.      Therefore, there is probable cause to believe that ROGER GLENN BOLAND has violated 18 U.S.C. § 2251(a) & (e) by knowingly producing images of child pornography,

---

[2] All the photographs taken on September 8, 2022 (described in 7e – 7i) were similar photographs, but taken from different angles.

4

18 U.S.C. § 2252A(a)(2) by knowingly distributing images of child pornography and 18 U.S.C. § 2252A(a)(5)(B) by knowingly possessing child pornography that depicts actual minors that have not reached the age of 17, engaged in sexually explicit conduct and the child pornography had been mailed, or shipped, or transported in interstate or foreign commerce.

FURTHER AFFIANT SAYETH NOT.

John M. Williams Jr
Investigator
Knoxville Police Department
Internet Crimes Against Children Task Force

Sworn and subscribed before me

This 9th day of September 2022.

HONORABLE JILL E. MCCOOK
UNITED STATES MAGISTRATE JUDGE

5

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

IN THE MATTER OF THE SEARCH OF:
RESIDENTIAL PROPERTY
LOCATED AT 915 JAMESENA MILLER DR
PIGEON FORGE, TENNESSEE 37863

Case No. 3:22-MJ- 2172

Filed Under Seal

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, John Williams, Jr., an Investigator with the Knoxville Police Department (KPD)

Internet Crimes against Children (ICAC) Task Force and being a Task Force Officer with the

United States Department of Homeland Security (DHS), Immigration and Customs Enforcement

(ICE), Homeland Security Investigations (HSI), being duly sworn, deposes and states the

following:

1.     I make this affidavit in support of an application for a warrant to search the

premises located at 915 Jamesena Miller Dr., Pigeon Forge, TN 37863. This residence is more

particularly described in ATTACHMENT A, a copy of which is attached hereto and incorporated

by reference herein.

2.     I have been employed with the KPD since August 14, 2000. Since December

2012, I have been assigned to the KPD's ICAC Task Force as an undercover online investigator.

The KPD-ICAC Task Force is responsible for investigating and enforcing federal criminal

statutes involving the sexual exploitation of children under Title 18, United States Code, Chapter

110, including, without limitation, section 2422(b). I have acquired experience in these matters

through specialized training and everyday work related to these types of investigations.

3.      As a federal task force officer, I am authorized to investigate violations of the laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4.      The information contained within the affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience, and/or information related to me by other law enforcement officers and/or agents. Since this affidavit is being submitted for the limited purpose of a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning the investigation. I have received training in the area of sexual exploitation of minors, including the enticement of minors by adults to engage in sexual activity.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2251(a), 2252A(a)(5)(B) and 2252A(a)(2) described in ATTACHMENT B, are presently located at the premises described in ATTACHMENT A.

## COMPUTERS AND CHILD PORNOGRAPHY

Your affiant has received extensive online undercover training as well as computer forensics training in reference to computer related criminal investigations. Your affiant knows all the below-described information as the result of his training and experience in the investigation of computer-related crime and by conferring with other law enforcement personnel who investigate computer-related crime.

6.      Your affiant knows that computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. It also has revolutionized the way in which child pornography collectors interact with each other. Child

2

pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths.

7. The advancement in technology of computers, smartphones and tablets has added to the methods used by child pornography collectors to interact with and sexually exploit children. Each of the above serves six functions in connection with child pornography. These are production, communication, distribution, receipt, advertisement, and storage.

8. Child pornographers can now produce both still and moving images directly from a common video camera, small action style cameras such as a GoPro, smartphones, laptop computers equipped with web cameras, and tablets. In the past, a camera could be attached, using a cable, directly to the computer using a device called a video capture board. This device turns the video output into a form that is usable by computer programs. The output of the video camera can be stored, manipulated, transferred, or printed directly from the computer, external hard drive, media card (SD, Compact Flash, micro SD, memory stick), smart phone, tablet, iPod or iPad. The captured image can be edited in very similar ways to a photograph. The image can be lightened, darkened, cropped, and manipulated in a wide variety of ways. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is inexpensive and technically easy

3

to produce, store, and distribute child pornography. There is the added benefit to the pornographer that this method of production does not leave as large a trail for law enforcement to follow, as had been the case in the past. Your affiant has been involved in recent investigations where digital cameras, smart phones, tablets, and webcams were used to produce child pornography and store said child pornography either on the device, personal computer, or removable media of the subject.

9.  New technology now allows child pornographers to use even smaller digital devices like smartphones and tablets that have digital cameras and video recording capability built directly into the devices. These devices are equipped with their own processors and memory that allow the devices to actually perform as small mini-computers. With the use of free and publicly available apps, a child pornographer has the ability to produce child pornography, receive and distribute it in a matter of just a few seconds and maintain relative anonymity using free open wireless access points.

10.  Previously, child pornography collectors had to rely on personal contact, U.S. mail, and telephonic communications in order to sell, trade, or market pornography. The development of the computer also has changed that. A device known as a modem allows any computer to connect to another computer through the use of telephone and/or cable lines. By connecting to a host computer, electronic contact can be made with literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. These host computers are sometimes operated by commercial concerns, such as Bellsouth, AT&T and America Online, which allow subscribers to dial a local number and connect to a network which is in turn connected to their host systems. Today many ISPs, such as Comcast Communications and Charter Communications, offer high-speed broadband Internet

4

service. Broadband is often called high-speed Internet because it usually has a high rate of data transmission much higher than the dial-up or DSL structure of the past. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web. Some of these systems offer their subscribers the ability to communicate publicly or privately with each other in real time in the form of "chat rooms" and/or instant messaging.

11.     These communication structures are ideal for individuals who possess, receive, and distribute child pornography. They provide open and anonymous communication, allowing users to locate other persons who share their interest in child pornography, while maintaining their anonymity. Once contact has been established, it is then possible to send text messages, graphic images, and high-resolution video to other individuals interested in child pornography. Moreover, the child pornographer need not use the large service providers. Child pornographers can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All these advantages are well known and are the foundation of transactions between child pornographers.

12.     The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution of child pornography. For example, child pornography can be transferred via electronic mail to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services, P2P services and easy

5

access to the Internet, computers, tablets, and smartphones are a preferred method of receipt and distribution of child pornographic materials.

13.    The computer's capability to store images in digital form makes it an ideal repository for child pornography. The size of the electronic storage media (commonly consisting of hard drives) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of two terabytes are not uncommon. The KPD-ICAC computer examiners routinely examine computer hard drives of 1 Terabyte (1000 gigabytes) and more in child pornography cases. These drives can store hundreds of thousands of images and video at very high resolution and quality. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, save the image, and store it at another location. Once this is done, there is no readily apparent evidence at the scene of the crime. Only with careful examination of electronic storage devices is it possible to recreate the evidence trail.

14.    Based on your affiant's knowledge, training and experience and training and experience of other officers, your affiant knows that child pornographers commonly download and save some of their collection of child pornography from their computer to removable media such as thumb drives, CD-ROMs, external hard drives, media cards (SD, Compact Flash, micro SD, memory stick), smart phones, smart televisions, computer game consoles (Sony PlayStation, Xbox), tablets, iPods or iPads so the images can be maintained in a manner that is both mobile and easily accessible to the collector. It is not uncommon for the child pornographer to print pictures of child pornography and to keep them in a safe and secure location for easy viewing. Thumb drives, CD-ROMs, external hard drives, media cards (SD, Compact Flash, micro SD, memory stick), smart phones, smart televisions, computer game consoles (Sony PlayStation,

6

Xbox), tablets, iPod's or iPads, containing child pornography and printed pictures of child pornography are not only kept near the computer, but also in hidden areas known to the child pornographer, to keep other individuals from discovering the illegal material. For example, a search warrant executed by other officers known to your affiant resulted in the finding of a hard drive wrapped in plastic hidden under a bathroom sink. Additionally, your affiant knows that in 2014, investigators with the KPD-ICAC Task Force arrested a subject for the interstate travel to meet a minor for sexual purposes (18 U.S.C. § 2423(a)). An external hard drive was located in the trunk of the suspect vehicle. A search warrant on the external hard drive revealed a contact offense by the subject on a four-year-old girl and numerous pornographic videos of the sexual abuse produced by the subject utilizing his smartphone.

15. Your affiant states that computer technology can be mobile in the form of laptop computers, removable thumb drives, removable hard drives, media cards (SD, Compact Flash, micro SD, memory stick), computer game consoles (Sony PlayStation, Microsoft Xbox), smart phones, iPad's, iPod's, tablets, or accessible via remote or wireless means. Therefore, evidence, contraband, instrumentalities, or fruits of crime can be located virtually anywhere within the residence or vehicle of a child pornographer. Your affiant has been involved in child pornography investigations where child pornography was found on removable media located in a suspect's vehicle. Additionally, child pornography can remain on devices indefinitely unless the user takes active steps to delete or overwrite the digital files of child pornography. Your affiant is aware of a current Knoxville Police investigation that originated as a P2P file sharing investigation in 2015. The computer examination of this case has located child pornography files stored on the suspect computer hard drive dating back to 2009. Additionally, recent investigations have revealed that some P2P suspects in order to remain safer have instituted the

7

methodology of downloading child pornography then deleting it after a short period of time. Based on information gained from Investigator Tom Evans regarding his interviews with child pornographers that utilized the above described method, the suspects indicated they felt an increased level of security knowing the child pornography was not stored on the computer/devices for long periods of time and that they could re-download mass amounts of child pornography at any time. However, computer exams have revealed that even if the above methodology is utilized examiners are able to locate and recover evidence about the criminal activity including but not limited to the files child pornography, software used to located and download child pornography, and log files identifying specific child pornography files that have been downloaded to the computer system of the suspect.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

16.     Based on your affiant's training and experience, your affiant knows that the search of computers and retrieval of data from computer systems and related media, often requires agents to seize all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following:

a)     Computer storage devices like thumb drives, CD-ROMs, external hard drives, media cards (SD, Compact Flash, micro SD, memory stick), smart phones, smart televisions, computer gaming consoles (Sony PlayStation, Xbox), tablets, iPods or iPads can store the equivalent of hundreds of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence, and he might store criminal evidence in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process

8

can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

        b)     Searching computer systems for criminal evidence is a highly technical process, requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, however, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources and from a destructive code imbedded in the system such as a "booby trap," a controlled environment is essential to its complete and accurate analysis.

     17.     Based upon your affiant's training and experience and consultation with experts in computer searches, data retrieval from computers, and related media, as well as consultations with other agents who have been involved in the search of computers and retrieval of data from computer systems, your affiant knows that searching computerized information for evidence or instrumentalities of crime commonly requires agents to seize all computer system input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the systems data in a laboratory or other controlled environment. This is true because of the following:

        a)     The peripheral devices, which allow users to enter or retrieve data from the storage devices, vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output (or "I/O") devices in order to read the data

on the system. It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices. If the analyst determines that the I/O devices, software, documentation, and/or data security devices are not necessary to retrieve and preserve the data after inspection, the government will return the material in a reasonable time.

b)      In order to fully retrieve data from a computer system, the analyst also needs all magnetic storage devices as well as the central processing unit. Further, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media) for proper data retrieval.

c)      The Knoxville Police Department's ICAC Task Force currently conducts onsite previews of computers in order to focus and seize only devices containing contraband. This process assists investigators with only seizing and examining items associated with the criminal activity. Based on experience, cooperation from occupants of the residence being searched assist investigators with identifying and seizing only devices that will contain contraband. It is important to note that systems currently powered off will not be powered on to conduct a preview unless investigators believe turning on the device will not alter or destroy possible evidence.

18.      In addition, there is probable cause to believe that the computer and its storage devices, the monitor, keyboard, and modem are all instrumentalities of the crime of advertising,

10

distribution, receipt, and/or possession of child pornography in violation of the law and should all be seized as such.

19. Based on your affiant's training and experience in computer searches and data retrieval from computers while in a laboratory setting, your affiant is aware that such searches can be complex and time consuming

## PROBABLE CAUSE

20. On September 7, 2022, I received a Cybertip # 133919558 from the National Center for Missing and Exploited Children (NCMEC). The Cybertip indicated a current or imminent risk to a 13-year-old female child and another 10-year-old female child.

21. NCMEC reported that a 67-year-old male from Pigeon Forge, Tennessee appears to be distributing originally produced apparent child sexual abuse material (CSAM) via private Facebook messages. Facebook profile review indicates the Facebook user "Roger Glenn" may have direct access to his 13-year-old granddaughter. Based on Facebook instant messages, "Roger Glenn", indicates that his granddaughter lives with him, and he has molested and produced CSAM that appears to be of his 13-year-old granddaughter. Additionally, "Roger Glenn" states in his Facebook communications that he is engaging in sexual activity with another 10-year-old female minor who appears to live within close proximity to him.

22. Facebook provided conversations between a "Roger Glenn" (100054000511943) account and Wayne Norby (100077832270674) account. The Facebook registered information for "Roger Glenn" (100054000511943) provided the name "Roger Glenn", phone number of (865) 410-4210, date of birth of 11/05/1954, and an email address of rogerboland1954@gmail.com.

11

23.　I have confirmed through the state of Tennessee that a Roger Glenn Boland, with a date of birth of 11/06/1954 is living at 915 Jamesena Miller Dr., Pigeon Forge, TN 37863.

24.　Furthermore, Facebook indicated that the user account of "Roger Glenn" (100054000511943) utilized the IPv6 IP address of 2601:844:101:2a40:3d1d:9dcf:92b0:2ea7 on June 03, 2022, 03:12 PM PDT to access the account. This IP address belongs to Comcast Cable Communications.

25.　On September 8, 2022, your affiant contacted Comcast Cable Communications and requested emergency disclosure for subscriber information for the IPv6 address of 2601:844:101:2a40:3d1d:9dcf:92b0:2ea7 on June 03, 2022, 03:12 PM PDT.

26.　Comcast responded with the following subscriber information:

　　　　Subscriber:　"Roger Glenn" Boland

　　　　Address:　　915 Jamesena Miller Dr., Pigeon Forge, TN 37863

27.　According to the Facebook Cybertip, the following communication occurred between "Roger Glenn" (100054000511943) account and Wayne Norby (100077832270674).

- "Roger Glenn" (100054000511943) - 05/08/2022 3:33:30pm PDT

  Me and my daughter well it's a long story but we live together and I have a little girl

- Wayne Norby (100077832270674) - 05/08/2022 3:33:56pm PDT

  Nice

- "Roger Glenn" (100054000511943) - 05/08/2022 3:34:22pm PDT

  The good thing is she doesn't mind me looking at other girls

- Wayne Norby (100077832270674) - 05/08/2022 3:34:55pm PDT

  I love girls

12

- "Roger Glenn" (100054000511943) - 05/08/2022 3:35:23pm PDT

  I do too I have always been this way just in my jeans can't help it LOL

- Wayne Norby (100077832270674) - 05/08/2022 3:35:55pm PDT

  Mine too

- Wayne Norby (100077832270674) - 05/08/2022 3:36:41pm PDT

  I wish I had little girl now

- "Roger Glenn" (100054000511943) - 05/08/2022 3:37:14pm PDT

  I wish you did too my friend I know what it's like I have one laying right here in the floor asleep

- "Roger Glenn" (100054000511943) - 05/08/2022 3:41:32pm PDT

  I like to talk to people that has the same interest I do you know you have to be able to trust someone and know things about them before you get too involved but I will send you a picture if you want me to

- Wayne Norby (100077832270674) - 05/08/2022 3:42:28pm PDT

  Ok

- "Roger Glenn" (100054000511943) - 05/08/2022 3:42:38pm PDT

  My wife and I divorced when my daughter was two she got remarried a dozen times I kept a girl raised her and we have lived together years and years

- Wayne Norby (100077832270674) - 05/08/2022 3:42:59pm PDT

  How do you feel looking at her

- "Roger Glenn" (100054000511943) - 05/08/2022 3:43:35pm PDT

  My daughter? Or my granddaughter? I was talking about two different ones maybe my phone didn't come in clear

13

- Wayne Norby (100077832270674) - 05/08/2022 3:44:03pm PDT

  Both

- "Roger Glenn" (100054000511943) - 05/08/2022 3:45:18pm PDT

  I love looking at them like I said my daughter we have always been together and the little girl when she was born they accidentally paralyzed her vocal cords and it caused her to have cerebral palsy or something like that but she is pretty as a picture

- Wayne Norby (100077832270674) - 05/08/2022 3:46:25pm PDT

  Cool

- "Roger Glenn" (100054000511943) - 05/08/2022 3:46:27pm PDT

  She just turned 12 in November they have her own different medications plus birth control shots

- "Roger Glenn" (100054000511943) - 05/08/2022 3:46:47pm PDT

  But she has always been a doll since a baby

- Wayne Norby (100077832270674) - 05/08/2022 3:47:11pm PDT

  Can't wait to see

- "Roger Glenn" (100054000511943) - 05/08/2022 3:47:28pm PDT

  I have a nephew that is a pediatric he fixed her when she was a baby

- "Roger Glenn" (100054000511943) - 05/08/2022 3:48:47pm PDT

  She has been on birth control since she was 10 she started to grow up man I sure hated that but I love her

- Wayne Norby (100077832270674) - 05/08/2022 3:49:51pm PDT

  It's to bad she had to grow up

14

- "Roger Glenn" (100054000511943) - 05/08/2022 3:50:13pm PDT

  They all do but you know in her mind she is not grown

- "Roger Glenn" (100054000511943) - 05/08/2022 3:50:23pm PDT

  She still thinks she's five

- "Roger Glenn" (100054000511943) - 05/08/2022 4:02:42pm PDT

  It will give you something to look at

- Wayne Norby (100077832270674) - 05/08/2022 4:03:03pm PDT

  Thanks

- "Roger Glenn" (100054000511943) - 05/08/2022 4:07:59pm PDT

  Sends an image of CSAM. This image had a filename of

  pdYqAGnAAy1Krgq3280017514_539471294196830_7254868061237008140_o.

  jpg and depicts a prepubescent female child laying on her back with her hands

  spreading her vagina apart."

- Wayne Norby (100077832270674) - 05/08/2022 4:08:29pm PDT

  Yummy

- Wayne Norby (100077832270674) - 05/08/2022 4:09:27pm PDT

  Do you want to touch that

- "Roger Glenn" (100054000511943) - 05/08/2022 4:10:15pm PDT

  I have many times

- Wayne Norby (100077832270674) - 05/08/2022 4:10:29pm PDT

  Do you cum

- "Roger Glenn" (100054000511943) - 05/08/2022 4:10:45pm PDT

  Yes yes

15

- Wayne Norby (100077832270674) - 05/08/2022 4:11:00pm PDT

  On her

- "Roger Glenn" (100054000511943) - 05/08/2022 4:11:15pm PDT

  In

- Wayne Norby (100077832270674) - 05/08/2022 4:13:46pm PDT

  Does she have a nice ass to

- "Roger Glenn" (100054000511943) - 05/08/2022 4:14:03pm PDT

  Yes big hole

- Wayne Norby (100077832270674) - 05/08/2022 4:14:25pm PDT

  Love it

- "Roger Glenn" (100054000511943) - 05/08/2022 4:15:17pm PDT

  Her dad is what you call bisexual I will let him f****** in the ass and he lets me

  have an hour with her

- "Roger Glenn" (100054000511943) - 05/08/2022 5:45:45pm PDT

  Just got finished cleaning up my granddaughter,got to give her a bath in a little

  bit.it 8:45 where I live I'll have a hard in a little wh

- Wayne Norby (100077832270674) - 05/08/2022 5:52:06pm PDT

  Wish I could watch you I love to cum

- "Roger Glenn" (100054000511943) - 05/08/2022 5:56:30pm PDT

  I do to I cum maybe 4 time a week unless my friend and his daughter come over

  then after he cums I'll cum in his girl , the one I sent you a picture of

  (There is an image that was sent to Wayne Norby (100077832270674) during the

  communications between "Roger Glenn" and Wayne Norby which depicts a

16

prepubescent female child that is approximately between 7 and 10 years old standing fully nude. I believe the image is of Randy's 10-year-old-daughter.

- "Roger Glenn" (100054000511943) - 05/08/2022 7:47:24pm PDT

  My friend Randy and his daughter will be here tomorrow while they are at the doctor

- Wayne Norby (100077832270674) - 05/08/2022 7:48:15pm PDT

  Are you going to fuck her

- "Roger Glenn" (100054000511943) - 05/08/2022 7:51:42pm PDT

  I'll probably eat her while he fucks my ass , sometimes I can fuck her at the same time if he hits me just right

- Wayne Norby (100077832270674) - 05/08/2022 7:56:00pm PDT

  Bet be fun to watch

- "Roger Glenn" (100054000511943) - 05/08/2022 7:56:27pm PDT

  Yes we have taped it before

- "Roger Glenn" (100054000511943) - 05/08/2022 7:56:48pm PDT

  And watched it later

- Wayne Norby (100077832270674) - 05/08/2022 7:58:28pm PDT

  How old is his daughter

- "Roger Glenn" (100054000511943) - 05/08/2022 7:58:46pm PDT

  That's her a picture I sent you

- "Roger Glenn" (100054000511943) - 05/08/2022 7:59:08pm PDT

  10

- Wayne Norby (100077832270674) - 05/08/2022 8:01:14pm PDT

17

Do you cum inside the girls

- "Roger Glenn" (100054000511943) - 05/08/2022 8:01:26pm PDT

  Yes

- "Roger Glenn" (100054000511943) - 05/09/2022 11:12:48am PDT

  This image depicts an apparent foot of a child with what resembles a wheelchair.

- "Roger Glenn" (100054000511943) - 05/09/2022 11:13:06am PDT

  This image depicts an apparent foot of a child with what resembles a wheelchair.

These two images stated above are not included in the Cybertip; however your affiant has confirmed that the 13-year-old granddaughter is confined to a wheelchair.

28.     On September 8, 2022, I previewed the profile image of "Roger Glenn" (100054000511943) and confirmed the subject depicted is "Roger Glenn" Boland, with a date of birth of 11/06/1954 is living at 915 Jamesena Miller Dr., Pigeon Forge, TN 37863.

29.     Furthermore, I located another publicly available Facebook account at https://www.facebook.com/roger.boland.5. This profile shows the same image that depicts "Roger Glenn" Boland, with a date of birth of 11/06/1954. On the profile page there is also a color image that depicts and young female child, approximately 10-13 years of age sitting in a wheelchair.

## CONCLUSION

30.     Based on the aforementioned information, your affiant respectfully submits that there is probable cause to believe that a computer and/or electronic devices located at 915 Jamesena Miller Dr., Pigeon Forge, TN 37863, are being used for the purpose of producing, possessing, receiving, and distributing child pornography. Your affiant bases this belief on the fact that on 05/08/2022 4:07:59pm PDT the user account of "Roger Glenn" (100054000511943)

18

sends a visual depiction of child sex abuse material to the user account of Wayne Norby (100077832270674) and describes the child as his own granddaughter who he claims to be actively sexually abusing.

31.     Additionally, the user account of "Roger Glenn" (100054000511943) advised that he has "taped" the sexual abuse to "watch" later.

32.     Further, there is probable cause to believe that evidence, fruits, and instrumentalities of this crime, which are listed specifically in Attachment B, which is incorporated herein by reference, are presently located on the premises described in Attachment A. Rule 41 of the Federal Rules of Criminal Procedure authorizes the government to seize and retain evidence and instrumentalities of a crime for a reasonable time and to examine, analyze and test them.

33.     The evidence, fruits, and instrumentalities of violation of Title 18, United States Code, Sections 2251(a) and (e) and 2252(A)(a)(2), believed to be concealed at the premises described in Attachment A, are listed in Attachment B of this affidavit, which is incorporated herein.

19

34.     Therefore, your affiant respectfully requests issuance of a search warrant

authorizing the search and seizure of the items listed in Attachment B.

Respectfully submitted,

John M. Williams, Jr.
Investigator
Knoxville Police Department
Internet Crimes Against Children Task Force

Subscribed and sworn to before me on this 8th day of September, 2022

JILL E. MCCOOK
UNITED STATES MAGISTRATE JUDGE

20

# ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

<u>Premises:</u>

The residence, located at 915 Jamesena Miller Dr., Pigeon Forge, TN 37863 in the Eastern District of Tennessee, for any computer/device(s) and computer related media located on the premises.

<u>Physical Description of Premises:</u>

Construction Type: The residence is on the lower level of the apartment buildings with red bricks. The apartment has a dark brown door with the numbers 915 in black writing beside the door.

<u>Premises Location:</u>

The residence is located 915 Jamesena Miller Dr., Pigeon Forge, TN.

Directions starting at Veterans Blvd @ Teaster Lane. Go west on Teaster Lane toward Old Mill Ave for .5 miles. Turn right onto Ridge Rd and travel .8 miles. Turn right onto Jamesena Miller Dr. Go approximately 350ft to 915 Jamesena Miller Dr., Pigeon Forge, TN 37863 on the left.





2

# ATTACHMENT B

**Below is a list of items to be searched and seized from the premises described in ATTACHMENT A:**

1.      Computer(s), computer hardware, software, related documentation, passwords, data security devices (as described below), videotapes, video recording devices, video recording players, monitors and or televisions, flatbed scanners and data where instrumentalities of and will contain evidence related to this crime. The following definitions apply to the terms as set out in this attachment:

(a) <u>Computer Hardware</u>:

Computer hardware consists of all equipment, which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Hardware includes any data-processing devices (including but not limited to central processing units; internal and peripheral storage devices such as thumb drives, CD-ROMs, external hard drives, media cards (SD, Compact Flash, micro SD, memory stick), smart phones, smart televisions, computer game consoles (Sony PlayStation, Xbox), tablets, iPods or iPads, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printers, video display monitors, and related communication devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

(b) <u>Computer Software</u>:

Computer software is digital information, which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

(c) <u>Documentation</u>:

Computer-related documentation consists of written, recorded, printed, or electronically stored material, which explains or illustrates how to configure or use computer hardware, software, or other related items.

(d) <u>Passwords and Data Security Devices</u>:

1.    Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-

set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it. This warrant does not authorize the compulsion of passwords from any person at premises to be searched.

2.      Child pornography in any form.

3.      Any and all notes, documents, records, or correspondence pertaining to child pornography as defined under Title 18, United States Code, Section 2256(8).

4.      Any and all correspondence identifying persons transmitting, through interstate commerce including the United States mail or computers, any visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

5.      Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

2